## STUYVESANT *vs.* HALL and others.

Where mortgaged premises are sold, subsequent to the date of the mortgage, to different purchasers, in parcels, such parcels, upon a foreclosure of the mortgage are to be sold in the inverse order of their alienation; according to the equitable rights of the different purchasers, as between themselves, in reference to the payment of the mortgage which is a lien upon the equity of redemption in all the parcels.

The same principle is applicable to subsequent incumbrances, upon different portions of the mortgaged premises, either by mortgage or judgment.

If a mortgagee, in such a case, with full notice of the equitable rights of the subsequent purchasers or incumbrancers as between themselves, releases a part of the mortgaged premises, which in equity is primarily liable for the payment of his debt, he will not be permitted to enforce the lien of his mortgage, against other portions of the premises, without first deducting the value of that part of the premises which has been released by him.

The whole object of the recording acts is to protect subsequent purchasers and incumbrancers against previous deeds, mortgages, &c., which are not recorded; and to deprive the holder of the previous unregistered conveyance, or mortgage, of the right which his priority would have given him at the common law. And the recording of a deed, or mortgage, is only constructive notice to those who have *subsequently* acquired some interest, or right in the property, under the grantor or mortgagor.

The case of *Guion* v. *Knapp*, (6 *Paige's Rep.* 35,) explained.

What amounts to constructive notice, to the mortgagee, of previous conveyances, or incumbrances.

The commencement of a suit in chancery is only constructive notice, of the pendency of such suit, as against persons who have acquired some title to, or some interest in, the property involved in the litigation, under the defendants, or some of them, *pendente lite.*

One of several executors can release a portion of the mortgaged premises, from the lien of a mortgage given to the testator, without the concurrence of his co-executors.

A satisfaction piece, acknowledged by one of several executors, is sufficient to discharge a mortgage given to the testator, and to authorize the cancelment of the registry of such mortgage.

THIS was an appeal, from a decree of the late assistant vice chancellor of the first circuit. The bill was filed to foreclose a mortgage given by Charles H. Hall to N. W. Stuyvesant, in September, 1824, to secure the payment of $4,666, at the expiration of twenty years, with interest thereon annually. This mortgage was upon a block of land in the city of New-York, containing fifty-six lots. The mortgage was duly recorded

soon after its date. And in March, 1827, Hall conveyed to Thomas H. Smith about 240 lots, in the city of New-York, including the premises mortgaged to Stuyvesant, which deed was also duly recorded. In February, 1828, T. H. Smith and G. W. Bruen conveyed the 240 lots to J. Anthon in trust, to secure a debt to John Hone & Sons; and the deed of trust was recorded in the book of conveyances. T. H. Smith died in 1828, and by his will devised all his real estate to his executors, in trust; but G. W. Bruen, one of the executors, alone assumed the execution of the trust. The interest upon Hall's bond and mortgage, which became due on the first of May, 1829, not having been paid, N. W. Stuyvesant shortly thereafter filed a bill to foreclose the mortgage. And he made G. W. Bruen and the heirs of T. H. Smith, J. Anthon the trustee, and John Hone & Sons, the cestuis que trust in the trust deed, and others, defendants in that suit; and that bill contained a statement of the execution of the trust deed, and of the devise of the estate of T. H. Smith to G. W. Bruen, and his co-executors, in trust. But the interest upon the bond and mortgage being paid, that foreclosure suit was discontinued, and the annual interest for seven years thereafter was paid by Hone & Sons to N. W. Stuyvesant, or to his executors.

In May, 1836, Anthon and the cestuis que trust in the trust deed to him, filed a bill to enforce their security, as a mortgage, or charge upon the real estate of Smith embraced therein ; in which suit G. W. Bruen and Matthias Bruen alone were made defendants. A decree, establishing the debt of the complainants in that suit, and for a sale of the 240 lots to pay the same, was obtained, and the master was authorized to take bonds and mortgages for the surplus of the purchase money, after satisfying the demand of the then complainants. Under that decree 235 of the lots were sold, including the 56 lots covered by the mortgage of Stuyvesant; and W. H. Thorne became the substituted purchaser thereof, for the aggregate sum of $467,200. As a security for a part of the purchase money belonging to the complainants in that suit, Thorne, the purchaser, mortgaged to the executors of John Hone 104 of the lots purchased by him

Stuyvesant v. Hall.

including 24 of the 56 lots embraced in the mortgage to Stuyvesant. The mortgage to the executors of Hone was dated on the first of February, 1837, and was recorded on the 28th of the same month. And another mortgage was given by Thorne to the master who made the sale, bearing the same date, and recorded a few minutes after the other. This last mortgage was given for the surplus moneys beyond the amount of the debt and costs of the complainants in that suit. And it was subsequently assigned, by the master, to G. W. Bruen, as the executor and trustee of T. H. Smith, under an order of the court.

In August, 1837, the executors of Hone filed a bill to foreclose their mortgage upon the 104 lots; in which suit Thorne, the mortgagor, G. W. Bruen, the assignee of the junior mortgage, and the master to whom such junior mortgage was originally given, were made defendants. And a notice of the commencement and object of that suit was duly filed in the office of the clerk of the city and county of New-York. A decree of foreclosure and sale was subsequently obtained in that suit. In March, 1838, the 104 lots were sold under that decree, and were purchased by the executors of John Hone; and they subsequently partitioned and conveyed them to his children and heirs, according to their several rights and interests in the estate.

N. W. Stuyvesant died in 1833. And in September, 1837, P. Stuyvesant and Catharine A. Catlin, the acting executor and executrix of his estate, upon the application and at the request of G. W. Bruen, gave to Thorne a release; whereby they discharged the whole fifty-six lots from the lien of their mortgage, except fourteen of the twenty-four, which were covered by the mortgage from Thorne to the executors of Hone. But there was nothing in that release which in any way referred to the mortgage to the executors of Hone; nor had the executors of N. W. Stuyvesant any knowledge of the rights of the executors of Hone, under their mortgage from Thorne, at the time of the execution of such release. The husband of Mrs. Catlin the acting executrix, did not join in the release given by her and her co-executor; but he assented to the re-

lease; and requested his wife to execute it. And the release was acknowledged by her before a proper officer. Subsequently to the execution of that release, the executor and executrix of N. W. Stuyvesant, together with the husband of the executrix, assigned the bond and mortgage originally given to their testator, by Hall, to the complainant in this suit.

The interest upon that bond and mortgage, for the years 1837 and 1838, was paid by G. W. Bruen. But the interest which became due in May, 1839, not being paid, the bill in this cause was filed to foreclose the mortgage. And Hall, the original mortgagor, G. W. Bruen, W. H. Thorne, and the children and heirs of Hone, to whom the fourteen lots which were not released from the complainant's mortgage belonged, were made parties to the suit; together with numerous other persons who had subsequent liens upon the mortgaged premises. The appellants answered the bill. And the cause was heard upon pleadings and proofs as to them, and upon the bill taken as confessed as to most of the other defendants. The assistant vice chancellor decided and decreed that the fourteen lots which were not included in the release, were still charged with the complainant's mortgage; and that the lien of the mortgage upon the fourteen lots was not discharged, nor impaired by the release of the residue of the fifty-six lots. He made an interlocutory decree declaring the rights of the parties accordingly. From this decree, those defendants who had appeared and answered, and who had set up a defence to the suit, appealed to the chancellor.

*John Anthon,* for the appellants.

*Hamilton Fish,* for the respondents.

THE CHANCELLOR. The mortgage of February, 1837, to the executors of J. Hone, was entitled to a preference, so far as related to the 24 lots embraced therein, over the mortgage of the same date, to the master, which was afterwards assigned to G. W. Bruen, as the owner of the surplus money upon the sale,

under the decree made in the suit of Anthon and others against George W. and Matthias Bruen. The mortgage to Hone's executors was intentionally recorded a few minutes before the other, for the purpose of securing that preference. As between Hone's executors and G. W. Bruen, therefore, their equities, in relation to the payment of the mortgage of Hall to Stuyvesant, were the same as if Thorne, the owner of the equity of redemption in the whole 56 lots, under the master's deed, had conveyed that equity of redemption in 24 of those lots to the executors of Hone, and had afterwards conveyed the residue of the 56 lots to G. W. Bruen. And upon the foreclosure of the mortgage in this suit, if none of the lots had been released from that mortgage, it would have been a matter of course to direct that the 32 lots, not embraced in the mortgage to Hone's executors, should be first sold to satisfy the amount due upon the complainant's mortgage, with interest and costs.

This court has frequently had occasion to act upon the principle of equity, that where mortgaged premises are subsequently sold to different purchasers in parcels, such parcels, upon a foreclosure of the mortgage, are to be sold in the inverse order of their alienation; according to the equitable rights of the different purchasers, as between themselves, in reference to the payment of the mortgage which is a lien upon the equity of redemption in all the parcels. And the same principle of equity is applicable to subsequent incumbrances, upon different portions of the mortgaged premises, either by mortgage or judgment. (*Hartley* v. *O'Flaherty*, *Lloyd & Goold's Rep. Temp. Plunkett*, 208. *Conrad* v. *Harrison*, 3 *Leigh's Rep.* 532. *New-York Life Insurance and Trust Company* v. *Milnor and others*, 1 *Barb. Ch. Rep.* 353. *Snyder* v. *Stafford and others*, 11 *Paige's Rep.* 71.) It has also been decided by this court, that if the mortgagee, in such a case, with full notice of the equitable rights of the subsequent purchasers or incumbrancers, as between themselves, releases a part of mortgaged premises which in equity is primarily liable for the payment of his debt, he will not be permitted to enforce the lien of his mortgage against other portions of the premises; without

first deducting the value of that part of the premises which has been released by him. (*Guion* v. *Knapp,* 6 *Paige's Rep.* 35.)

In this case, N. W. Stuyvesant, the mortgagee, undoubtedly had notice of the conveyance from Hall, the mortgagor, to T. H. Smith ; of the trust deed from Smith and G. W. Bruen to Anthon ; and of the death of Smith and the devise of his estate, or interest, in the equity of redemption to G. W. Bruen. For these facts were all referred to in the bill filed by Stuyvesant in May, 1829, to foreclose his mortgage for the non-payment of the interest money. But if we should even presume that the executors of Stuyvesant had notice of the suit of Anthon and of Hone & Sons, to enforce the security of the trust deed, and of the decree for sale made in that suit, it would not be notice to them of the equity claimed by the appellants here ; an equity to have 32 of the 56 lots purchased by Thorne, under that decree, and mortgaged to the master, charged with the payment of the Stuyvesant mortgage, before resorting to the other 24 lots, purchased by Thorne at the same time, and mortgaged to the executors of Hone. Previous to the giving of these two mortgages by Thorne, no equity existed, in behalf of any person, which would have rendered it improper or inequitable for the executors of Stuyvesant to release any part of the mortgaged premises from the lien of their mortgage ; even if such executors had received actual notice of all the facts as they then existed. For, as the security of the trust deed, and of the decree obtained under the same, extended to the whole 56 lots embraced in the mortgage to Stuyvesant, a release of any of those lots from the last mentioned mortgage, at that time, might benefit the executors of Hone, but it could not possibly have diminished their security. Every thing that occurred previous to the sale and conveyance by the master, under the decree in that cause, must therefore be laid out of view in deciding the question whether the holders of the Stuyvesant mortgage had notice of any existing equity, in the executors of Hone, which should have prevented them from releasing a part of the 56

lots from the lien of their mortgage, and leaving their mortgage to be enforced against the other remaining 14 lots.

There is not a particle of proof to charge the acting executor and executrix of Stuyvesant with actual notice of the rights of the executors of Hone, under the mortgage of February, 1837, at the time the release was executed, in September of that year. And if G. W. Bruen, or Thorne, wished to commit a fraud upon the executors of Hone, by obtaining a release of the portion of the premises which was primarily liable for the payment of the mortgage given by Hall, it is wholly improbable that they would inform the executor and executrix of Stuyvesant that Hone's executors had a mortgage upon the 24 lots, which they were proceeding to foreclose; and which mortgage was first recorded, and was entitled to a priority in payment over a subsequent mortgage given by Thorne upon the whole 56 lots embraced in the Stuyvesant mortgage. On the contrary, the natural course of Bruen and Thorne would have been to inform the holders of the Stuyvesant mortgage that Thorne had purchased the whole of the 56 lots, under the decree founded upon the trust deed to Anthon, and to ask the holders of that mortgage to release 42 lots from the lien thereof; leaving their mortgage to remain as a security upon the remaining 14 lots, which, at that time, were of sufficient value to render the collection of the mortgage, and the interest thereon, perfectly safe.

The only remaining question to be considered is, whether the recording of the mortgage of February, 1837, from Thorne to Hone's executors, or the filing of the notice of the pendency of the suit to foreclose that mortgage, was constructive notice, to the executors and executrix of Stuyvesant, of the equitable rights of the executors of Hone under their mortgage. In the case of *Cheesebrough* v. *Millard,* (1 *John. Ch. Rep.* 414,) Chancellor Kent held, in reference to an equity of this description arising under a judgment, that the docketing of a judgment which became thereby a prior lien upon a part of the mortgaged premises, was not constructive notice to the mortgagee of the whole premises, of the equitable rights of this judgment creditor, under his subsequent judgment. In *Wil-*

*liams* v. *Sorrel*, (4 *Ves.* 389,) Lord Rosslyn decided that the registry of the assignment of a mortgage was not constructive notice to the mortgagor of the existence of such assignment. And in *Bushel* v. *Bushel*, (1 *Scho. & Lef.* 90,) Lord Redesdale, upon a full examination of the question, and of the several decisions in England, came to the conclusion that the registry of a deed or mortgage was not constructive notice of its exist-ence ; and that the only effect of the registry was to give it pri-ority over a prior unregistered deed or mortgage. The whole object of the recording acts is to protect subsequent purchasers, and incumbrancers, against previous deeds, mortgages, &c., which are not recorded ; and to deprive the holder of the prior unregistered conveyance or mortgage of the right which his priority would have given him at the common law. The recording of a deed or mortgage, therefore, is constructive notice only to those who have subsequently acquired some interest or right in the property under the grantor, or mortgagor. Thus, in the case of *Lieby* v. *Wolf*, (10 *Ohio Rep.* 80,) where the owner of an unrecorded lease mortgaged his interest in the leasehold premises, and the mortgage was duly recorded, and he afterwards conveyed his interest in the lease to another per-son, who surrendered the lease and took a new one from the original lessors, and afterwards sold such new lease to a bona fide purchaser, the supreme court of Ohio decided that the registry of the mortgage given by the first lessee was not con-structive notice of the existence of such mortgage against the purchaser of the right of the lessee under the new lease. That such purchaser did not derive his title to the premises from the mortgagor, under and through the original lease to him, but from the lessors in the new lease, and through that lease only. (*See also Halstead* v. *The Bank of Kentucky*, 4 *J. J. Marsh. Rep.* 558 ; *Wiseman* v. *Westland*, 1 *Young & Jerv. Rep.* 117 ; *Bedford* v. *Backhouse, W. Kelynge*, 5.)

The assistant vice chancellor is right in supposing that this court, in the case of *Guion* v. *Knapp*, (6 *Paige's Rep.* 35,) did not intend to decide that the recording of a subsequent deed, given by the mortgagor, was constructive notice to the mortgagee

of the equitable right, of the grantee in that deed, to have the residue of the mortgaged premises, not embraced in his deed, first charged with the amount due upon the mortgage. In that case the mortgagees had taken an assignment of a subsequent mortgage of a part of the mortgaged premises; which mortgage, upon its face, showed that Humphrey and Palmer had purchased parts of the premises covered by the original mortgage. This was held sufficient to make it their duty to inquire as to the equitable rights of Humphrey and Palmer, in reference to the mortgage, before the lands still belonging to their grantor were released. And the recording of the deeds to Humphrey and Palmer is only referred to, by the court, to show that if such inquiries had been made, there would have been no difficulty in ascertaining their equitable rights, from the examination of the records alone.

In that case too, this court expressly decided that the right of subsequent purchasers, or incumbrancers, of different parts of the mortgaged premises, to have such parts charged in the inverse order of their alienation, was not a legal but an equitable right, and was governed by equitable principles. And that the conscience of the party, who held the incumbrance on the whole premises, was not affected unless he was informed of the existence of the facts upon which that equitable right depended; or had sufficient notice to put him upon inquiry. In the case of *Jones* v. *Smith*, (1 *Hare's Ch. Rep.* 55,) Sir James Wigram says, the cases in which constructive notice has been established resolve themselves into two classes: *First*, cases in which the party charged has had actual notice that the property in dispute was in fact charged, incumbered, or in some way affected; and the court has thereupon bound him with constructive notice of facts and instruments, to a knowledge of which he would have been led by an inquiry after the charge, incumbrance, or other circumstances affecting the property, and respecting which he had actual notice. *Secondly*, cases in which the court is satisfied, by the evidence, that the party charged with notice has designedly abstained from making inquiry, for the very purpose of avoiding notice.

Testing the case under consideration by these principles, there is nothing to charge the executor and executrix of Stuyvesant with constructive notice that the executors of Hone had a mortgage upon a part of the 56 lots, embraced in the Stuyvesant mortgage and in the master's deed to Thorne, at the time they executed the release, in September, 1837.

It is true the executors of Hone, a few weeks before that time, had filed a bill against Thorne and G. W. Bruen, and the master, to whom the junior mortgage was given, to foreclose the prior mortgage upon the 24 lots; and a notice of the pendency of that suit was filed in the proper office, to make the filing constructive notice to a purchaser. But the executor and executrix of Stuyvesant were not made parties to that suit; nor is there any proof from which it can reasonably be inferred that they ever heard that such a suit had been brought. And the commencement of a suit in chancery is only constructive notice, of the pendency of such suit, as against persons who have acquired some title to, or some interest in, the property involved in the litigation, under the defendants, or some of them, *pendente lite.*

It is not necessary to inquire whether an executrix, who is a feme covert, can release a portion of the mortgaged premises from the lien of a mortgage, given to the testator, without the concurrence of her husband, signified by his joining with her in such release. For, the release of one of two executors is sufficient. And a satisfaction piece acknowledged by one of the executors, would be sufficient to discharge the whole mortgage, and to authorize the cancelment of the registry of such mortgage.

Nor was the objection well taken, that the complainant in this case was bound to file her bill against the present owners of the whole 56 lots; charging that the release was obtained for the purpose of defrauding the executors of Hone. If the executor and executrix of Stuyvesant acted in good faith, and without any intention of committing a fraud, it was sufficient for their assignee to file her bill against those who had subsisting interests in that portion of the mortgaged premises which had

not been released.  And if the 32 lots, not embraced in the mortgage to the executors of Hone, and which were primarily chargeable with the payment of the Stuyvesant mortgage before the execution of the release, have not gone into the hands of bona fide purchasers, but still belong to Thorne, or G. W. Bruen, the present owners of the 14 lots which were not released, will have no difficulty, upon a proper bill, in charging the lands held by them with the amount for which those 14 lots were liable when the release was obtained.

The decree of the assistant vice chancellor was not erroneous; and it must be affirmed with costs.