## THE PEOPLE *on rel.* EAGLE *a.* KEYSER.

*Court of Appeals; January Term*, 1864.

MORTGAGE.—DESCRIPTIO PERSONÆ.—EXECUTORS AND ADMIN-
ISTRATORS.—PARTNERS.—SATISFACTION OF MORTGAGE.—DIS-
CHARGE OF RECORD.—SATISFACTION OF JUDGMENT.

Where a mortgage was given to " M. and W., executors of the estate of E.," and
payable to " the party of the second part, his executors, administrators, and

The People *on rel.* Eagle *a.* Keyser.

assigns,"—*Held*, that the appellation was merely descriptive, and that the mortgage was the individual property of M. and W.

Where two executors or administrators take an obligation to themselves jointly as representatives of their testator, for a debt belonging to his estate, one of them can receive payment and lawfully discharge the obligation.

The same rule applies in the case of an obligation in favor of partners, and a release by one is a discharge of the obligation.

Under the provisions of 1 Rev. Stat., 761, § 28, the register is bound to discharge of record a mortgage in favor of two or more jointly, on receiving a certificate of satisfaction executed and acknowledged by one only of such mortgagees.

*It seems,* that it is the duty of the county clerk to satisfy of record a judgment in favor of several, on receiving a satisfaction-piece executed by one only of the judgment creditors.

Appeal from an order of the Supreme Court, First District, refusing a mandamus.

The proceeding was instituted by William Eagle against John Keyser. A motion was made on due notice, in the Supreme Court, at special term, for a mandamus, directed to the register of the city and county of New York, commanding him to file a satisfaction-piece of a mortgage recorded in his office, and to cancel and discharge of record the mortgage. The motion was denied by order of the court.

On appeal, the court, at general term, reversed that order, and directed a mandamus to issue, commanding the register to receive and file, and record in his office, the satisfaction-piece. (39 *Barb.*, 587.) But the court would not require the register to discharge the mortgage on the record, and the appellant appealed from the order, so far as it did not direct the writ to issue for that purpose. The mortgage was made by the relator, William Eagle, to Samuel Maycock and John Wright, executors of the will of James Espie, deceased, to secure the payment of $1,200, being money belonging to the testator's estate, loaned by them as such executors to Eagle. Maycock having died, the money was paid to John Wright, the surviving executor, and the certificate of payment was executed and duly acknowledged by him. The mortgage purported to be made by William Eagle, of the first part, to "Samuel Maycock and John Wright, executors of the estate of James Espie, deceased, of the second part," who were described subsequently in the mortgage as "the party of the second part." The register declined to receive or file the certificate, or to cancel or discharge

of record the mortgage, on the ground that it should be executed not only by John Wright, but also by the executors of the will of Samuel Maycock. It was proved by affidavit that they refused to execute it, insisting that they, as executors of Mr. Maycock's will, had no interest in the mortgage, and that the mortgage debt did not belong to his estate, or form any part of its assets. It was shown by affidavit that the loan to Eagle was made by Maycock and Wright as executors of the will of Espie, and that the mortgage was held by them as such executors, and the money secured by it belonged to the estate of Espie.

*Marshall S. Bidwell*, for the appellant.

*Richard H. Bowne*, for the respondent.—I. The register is authorized to discharge the mortgage only when a certificate signed " by the mortgagee, his personal representatives or assigns," shall be presented to him. ( 1 *Rev. Stat.*, 761, § 28.)

II. The certificate offered to the register by the relator was not such as is prescribed by the statute. It affected to treat the mortgage as the property of the estate of James Espie, and the certificate is signed by " John Wright, surviving executor." The uniform practice in the register's office for the last thirty years, in respect to such mortgages, is shown by affidavit. And the case of People *a.* Miner (32 *Barb.*, 612), is an express decision that upon such a certificate the register should not cancel the mortgage. (Same case, 23 *How. Pr.*, 223.)

III. The relator on this application does not come before the court as the survivor of two mortgagees who have made a joint loan ; he claims simply to act as surviving executor, and as if the mortgage money was payable to him as such executor. From the face of the mortgage, it is not the property of the estate, but that of the mortgagees themselves. (Peck *a.* Mallams, 10 *N. Y.* (6 *Seld.*), 509.) It seems doubtful whether a mortgage taken to two persons jointly, survives so that the survivor can collect the whole. (Rigden *a.* Vallier, 2 *Ves. Sr.*, 258 ; 2 *Story's Eq.*, § 1206 ; 2 *Powell on Mortg.*, 699, 700.) In view of this doubt, and the uniform manner in which the register's predecessors have conducted the business of that office, the register was justified in refusing to discharge this mortgage.

BY THE COURT.—BALCOM, J.—According to the decision of this court, in Peck *a.* Mallams (10 *N. Y.* (6 *Seld.*, 509) ), the words "*Executors of the Estate of James Espie, deceased,*" annexed to the names of the mortgagees, must be held to be merely descriptive of the persons to whom the mortgage was given; and as the money mentioned in the mortgage was payable to Maycock and Wright, "their executors, administrators, or assigns," the register was bound to regard the mortgage as the private property of the mortgagees, their executors, administrators, or assigns. His duty would have been different if the mortgage on its face had shown it was taken by Maycock and Wright as executors of Espie for a debt due his estate. (Bogert *a.* Hertell, 4 *Hill*, 492.)

There can be no doubt that where two executors take an obligation to themselves jointly as representatives of their testator for a debt belonging to his estate, one of them can receive, pay, and lawfully discharge the obligation, whether his coexecutor be dead or alive. (*Willard on Ex.*, 209, 269; 4 *Hill*, 492; Stuyvesant *a.* Hall, 2 *Barb. Ch.*, 151; Douglass *a.* Satterlee, 11 *Johns.*, 16; Murray *a.* Blatchford, 1 *Wend.*, 583). One of two administrators can do the same. (See authorities *supra*.) A surviving trustee may do this. (*Hill on Trusts & Trustees*, 3 Am. ed., 442; *Lewin on Trusts & Trustees, Law Lib.*, 4th series, vol. 72, p. 284.)

The Supreme Court of Pennsylvania held, in Penn *a.* Butler (4 *Dall.*, 354), where two persons sold real estate which belonged to them as tenants in common, and took bonds and mortgages in their joint names, that the surviving obligee and mortgagee "was entitled to the possession of the joint securities, and that he might recover the amount." The same court held, in Bowes *a.* Seeger (8 *Watts & Serg.*, 222), that where a mortgage was assigned to two persons, payment of it to one of such persons discharged the debt, and that the receipt of the one to whom the payment was made, was evidence to show the debt was discharged.

KENT, Ch. J., in delivering the opinion of the court in Pierson *a.* Hooker (3 *Johns.*, 68), said, "It is a general principle of law that where two have a joint personal interest, the release of one bars the other (Ruddock's Case, 6 *Co.*, 25); and I cannot

perceive that the case of copartners in trade forms an exception to the general rule."

The court held in that case, that the release of a debt due a copartnership by one of several partners by a writing under his hand and seal, in the name of the copartnership, was binding on all the partners.

It was held in Austin *a.* Hall (13 *Johns.*, 286), that in an action by tenants in common for a trespass on land of which they were the coheirs, a release by one of the plaintiffs was a bar to the action.

Fitch *a.* Forman (14 *Johns.*, 172), was an action on a covenant, by which the defendant bound himself to do a certain act by a certain day. One of the plaintiffs, afterwards, by a writing under seal indorsed upon the original agreement, released the defendant from a performance within the time mentioned in the agreement, and extended the time of performance. And the court held such release was a bar to the action, the breach of the covenant assigned being the non-performance of the act by the day mentioned in the agreement. THOMPSON, Ch. J., in delivering the opinion of the court, said, "They (the plaintiffs), had a joint personal interest, and the release or modification by one would bind the other."

Judge Cowen laid down the rule in his treatise (2 *Cow. Tr.*, 2 ed., 772), that a release by one of several persons having a joint demand, is valid against all, even though such demand be the proper subject of trespass, or case, as for a wrong." He cited the cases in Johnson (*supra*).

The principle on which the cases were determined authorized either Maycock or Wright to receive the money for which the mortgage was given, and satisfy the same, though it was their private property, and held by them as tenants in common; and upon the same principle, Wright, as surviving mortgagee, after the death of Maycock could lawfully receive the money mentioned in the mortgage, and execute a certificate satisfying the mortgage, which would authorize the register to discharge the same upon the record.

The right to the money secured by the mortgage being personal (a mere chose or thing in action), either mortgagee could receive the same and discharge the right to recover it of the mortgagor.

BAYLEY, J., said, in Barton a. Williams (5 *Barn. & Ald.*, 395), "There may be cases in which the indivisible nature of the subject-matter of the tenancy in common may raise an implied authority in one to sell the whole." A mortgage is indivisible, and though payable to two persons jointly, the right to receive or recover the money due upon it is single. This right is not divided by the death of one of the mortgagees. Hence the death of Maycock did not affect the right of the surviving mortgagee to keep the mortgage in question and receive the money due on it, and satisfy it.

It is laid down in Graham's Practice, that "on the death of the party with whom the contract was made, if the covenant or promise be to the deceased and another jointly, the action must be brought by the survivor, or his representatives, without joining the representatives of the deceased." (*Graham's Pr.*, 2 ed., 90; see, also, Voorhies a. Childs, 17 *N. Y.*, 354; *Cow. Tr.*, 2 ed., vol. 1, p. 553; Anderson a. Martindale, 1 *East.*, 497; 4 *Dall.*, 359). The Supreme Court of Maine held, in Williams a. Hilton (35 *Maine*, 547), that "a writ upon a mortgage to obtain a foreclosure may be brought and maintained by the surviving mortgagee." But it has been held in Massachusetts, if a mortgage be given to two persons to secure their several demands, and such demands and their different amounts are specified in the mortgage, each has a right to enforce his claim under the mortgage in form adapted to his case, and that the surviving mortgagee cannot maintain an action on the mortgage to enforce payment of the debt due to the deceased mortgagee. (Burnett a. Pratt, 22 *Pick.*, 556.) That case was correctly decided, because the mortgage itself divided the money between the mortgagees, so the mortgagor knew from the mortgage how much money belonged to each mortgagee.

But if it should be conceded that our Code now requires the representatives of the deceased mortgagee to join with the survivor in an action for the foreclosure of a mortgage taken by the deceased and the survivor, in their joint names as tenants in common, such requirement would not take away the common-law right of the survivor to receive the money due upon the mortgage when tendered to him, and satisfy the mortgage by a proper instrument in writing, and thus compel the representatives of the deceased mortgagee to look to him for the

money, if it or any portion of it belonged to such mortgagee. If the Code required the representatives of a deceased partner to join with the survivor in bringing actions to recover debts due the copartnership, the survivor would still retain his common-law rights to receive payment of such debts, and completely discharge them by receipts or certificates.

It seems to me, there can be no doubt that the payment of the mortgage to the surviving mortgagee discharged the mortgage, so no action could be maintained on it by the representatives of the deceased mortgagee, or by them and the survivor, or by either.

The only remaining question is, whether the statute respecting the cancellation of the records of mortgages requires that the satisfaction certificate shall be signed and acknowledged by the representatives of the deceased mortgagee as well as the survivor, to authorize the register to cancel the mortgage upon the record.

The statute is, that "any mortgage that has been registered or recorded, or that may hereafter be recorded, shall be discharged upon the record thereof, by the officer in whose custody it shall be whenever there shall be presented to him a certificate signed by the mortgagee, his personal representatives or assigns, acknowledged," &c. (1 *Rev. Stat.*, 761, § 28.) This statute does not mean that all the mortgagees or their personal representatives, must execute and acknowledge the satisfaction certificate to authorize the officer in whose custody the record of the mortgage shall be to record it, and discharge the mortgage upon the record, provided a satisfaction certificate, signed and acknowledged by one of the mortgagees, discharges the mortgagor from all claim of each and every of the mortgagees and their representatives upon the mortgage. (See People *a.* Miner, 37 *Barb.*, 466; S. C., 23 *How. Pr.*, 223; Stuyvesant *a.* Hall, 2 *Barb. Ch.*, 151.) The statute respecting cancelling dockets of judgments is, that the clerk may cancel and discharge them, "upon filing with him an acknowledgment of satisfaction, signed by the party in whose favor such judgment was obtained, or by his executors or administrators, duly authenticated," &c. (2 *Rev. Stat.*, 362, § 22.) But whoever heard it was necessary that all the parties in whose favor a joint judgment is recovered, must sign and acknowledge a sat-

isfaction certificate to authorize the clerk to cancel and discharge the docket? The signing and acknowledging of the proper satisfaction certificate by one of the parties who obtained such a judgment, has always been considered sufficient to justify the clerk in cancelling and discharging the docket of it. And it is not at all probable that everybody has been mistaken respecting the legality of this mode of satisfying judgments. I am not prepared to admit there has been an error touching it; for I think there has not been any.

For these reasons, I am of the opinion the register should have received and recorded the satisfaction certificate, showing the mortgage had been paid, and duly discharged the mortgage upon the record thereof.

It follows, that the portion of the order of the general term of the Supreme Court appealed from, should be reversed, and a mandamus ordered to be issued, as moved for by the relator.

I think no costs should be awarded to either party.

## EDSALL *a.* BROOKS.

*New York Superior Court; General Term, March,* 1864.

LIBEL.—REPORT OF JUDICIAL PROCEEDINGS.—PRIVILEGED COMMUNICATION.

Both at the common law and under the statute (*Laws of* 1854, 314, ch. 130), a fair report of a public official proceeding is a privileged communication, and is libellous only if there be proof of actual malice.

To charge a public officer with " black-mailing," and to assert that he has been dismissed for that cause, is calculated to degrade and bring him into disrepute, resulting in injury to his character with the public, and is libellous.

The defendants published in their newspaper an account of the proceedings before the commissioners of police against the plaintiff, who was a policeman, upon charges that he had improperly received money for services rendered in the performance of his duty, in which proceedings the plaintiff was dismissed by the commissioners, not so much for having received the reward, but for omitting to give notice of it to the commissioners. The defendants prefixed to their report of the proceeding the following title and statement : " BLACK-MAILING BY A POLICEMAN.—Isaac W. Edsall, of the twenty-sixth precinct, City