THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, appellant,

*v.*

THOMAS T. STURGES et al., respondents.

1. A sale under a decree in chancery may be set aside, even after deed delivered, by an order made in the original cause, either for impropriety in the sale, or for the purpose of letting in a defence to the action.

2. The making of such an order is a proper matter of appeal, either by the parties to the suit or by the purchaser.

3. A prior mortgage to "S. & Co., a firm composed of T. S. and J. S.," will be postponed to a subsequent one given to secure a loan made upon the strength of an agreement of J. S., surviving partner, and one of the executors of T. S., deceased, to the effect that the lender's lien should be preferred.

4. Acts done by one of several executors, which relate to the delivery, gift, sale or release of the testator's personalty, are deemed the acts of all, and bind the estate accordingly.

5. In equity pleadings, such degree of certainty should be adopted as will give the opposite party full information of the case he is called upon to meet.

6. At or after final hearing, it is too late to object to mere want of precision in the bill.

7. A bill alleging that a contract about a mortgage given to S. & Co., was made by that firm or their survivors and legal representatives, and setting out who are the surviving partner and the legal representatives of the deceased, and making them defendants, is not so vague as to justify the vacation of a decree based upon the contract, especially after the decree has been executed.

---

On appeal from a decree of the vice-chancellor, reported in *Mutual Life Ins. Co.* v. *Sturges, 5 Stew. Eq. 678.*

*Mr. B. Gummere,* for appellant.

The proceedings on the part of the complainant are in conformity to the statute and rules and practice of the court.  *Carew* v. *Johnston, 2 Sch. & Lef. 280 ; Smith* v. *Kay, 7 H. L. Cas. 750.*

Under these circumstances, the decree being not only enrolled, but executed, the rule of practice is that the decree cannot be altered except by a bill of review.  *2 Dan. Ch. Pr. (4th ed.) 1030, note 8 ; Carpenter* v. *Mutchmore, 2 McCart. 123.*

The nominal ground of the application is surprise ; but there is no pretence, even in the allegations of the petition, that there was a surprise practiced upon the defendants, within the legal meaning of the term.

But it is said that Henry C. Knubel, who, by force of the bankrupt act, is the assignee of the interest of James S. Sturges and of the petitioner, Thomas S. Sturges, in the second mortgage, was not made a party to the suit, and had no notice or knowledge of it.  *Lathrop* v. *Drake, 30 Leg. Int. 141 ; Cogdell* v. *Exum, 10 B. R. 327 ; Norton* v. *De Villeneuve, 13 B. R. 304 ; Bump's Bank. 795.*

Two distinct matters of alleged fraud appear on the face of the petition—

1. The first is charged with some distinctness, and it is, in effect, that Mr. Burnham had presented to the master, and had sworn before him to the receipt of a letter from one of Sturges & Co., which they had never seen, and that he had presented their mortgage to the master without any request from either of them, and without any authority, express or implied, and without their knowledge or consent.

2. The second is set up as an inference of constructive fraud, in that the contract of subordination of the Sturges & Co. mortgage was made after the death of Thomas T. Sturges, the elder, and after a moiety of said mortgage had vested in his executors and legatees.  *Kerr on Fraud (Bump's ed.) 374 ; Bigelow on Estoppel 485 ; Stewart* v. *Lehigh Valley R. R. Co., 9 Vr. 505, 524.*

Where one of two innocent parties must suffer, the one who, by his act or neglect, has enabled the fraud-doer to commit the fraud, is liable.  *Kerr on Fraud (Bump's ed.) 138, 139.*

The mortgage of Sturges & Co. was a chose in action, and the legal title thereto vested in James S. Sturges, the survivor of that firm.    *Gow on Part. 131, 348; Story on Part.* § *346; People* v. *Keyser, 28 N. Y. 226, 235; Holbrook* v. *Lackey, 13 Metc. 132; Shreve* v. *Joyce, 7 Vr. 44, 48; Murray* v. *Blatchford, 1 Wend. 583; Bogert* v. *Hertell, 4 Hill 492, 503; Stuyvesant* v. *Hall, 2 Barb. Ch. 151, 160; 2 Wms. Exrs. (6th Am. ed.) 1013, 1014; Jones on Mortgages* § *796.*

*Mr. Theo. Little* for respondents.

The opinion of the court was delivered by

DIXON, J.

This appeal is taken from an order made upon the opinion of the vice-chancellor, that an interlocutory decree in foreclosure and all proceedings subsequent thereto, including the sheriff's sale, be set aside, so as to admit Henry C. Knubel, assignee in bankruptcy of James S. Sturges, as a defendant, and to permit him and the executors of Thomas T. Sturges, deceased, to plead, answer or demur to the bill.

Before the filing of the petition, in accordance with which this order was made, conveyances of the property sold had been delivered by the sheriff to the purchasers, who were the complainants as to part, and a stranger to the suit as to the residue. Neither the petition nor the order takes any notice of the sale to the stranger, nor is he a party to the appeal. His claims, therefore, need not be considered here.

The fact that the sheriff's sale had been perfected by delivery of a deed, is not an insuperable bar to the vacation of the proceedings.

In support of this proposition, it is unnecessary to say more than is said by Chancellor Zabriskie, speaking for this court, in *National Bank of the Metropolis* v. *Sprague, 6 C. E. Gr. 458,* where, by citation of numerous cases in England, New York and New Jersey, he shows it to be the settled practice in courts

of equity, that, for sufficient cause, sales under their decrees may be set aside by an order in the original suit, as well after as before confirmation and conveyance, and that the allowance or denial of such an order is a proper subject for appeal, either by the parties to the suit or by the purchaser.

Usually the ground upon which the court has proceeded to vacate a sale, has been some impropriety attending the sale; but this is not the only ground. In *Campbell* v. *Gardner, 3 Stock. 423,* Chancellor Williamson set aside a sale after deed delivered, because, under peculiar circumstances, the mortgagees had not been apprised of the pendency of the suit.

In the case first mentioned, Chancellor Zabriskie intimates that perhaps the opening of a sale and decree for the purpose of letting in a defence, is in the discretion of the chancellor so far that no appeal would lie. But this intimation has not been adopted by this court. The right of appeal depends upon whether the appellant is, in a legal sense, aggrieved (*Green* v. *Blackwell, 5 Stew. Eq. 768*); and that must be determined by considering, not upon what grounds the chancellor has proceeded, but what effect his action has upon the claims of the appellant. All the authorities concede that an order setting aside a sale for illegality attending it is appealable. The result to the purchaser is the same, if it be set aside, to let in a defence. His definite rights, under either his contract to buy or his conveyance, are finally destroyed in both cases. Such claims do not depend upon mere discretion, but must be protected or overthrown according to legal and equitable principles. Their owner is aggrieved by every order in chancery which substantially impairs them, and may seek redress for such grievance by appeal to this court.

In *Smith* v. *Alton, 7 C. E. Gr. 572,* an appeal was taken from an order of the chancellor, opening the decree to sell in a foreclosure suit, setting aside the sheriff's sale and admitting the mortgagees to make defence. The appeal was entertained and the order affirmed.

In *Cawley* v. *Leonard, 1 Stew. Eq. 467,* the appellants had petitioned for similar relief three years after sheriff's conveyances

were executed, and the chancellor had refused the prayer. On appeal to this court, the relief asked for was given, on the ground of surprise and merits.

These precedents are controlling, both upon the power of the court of chancery to make the order complained of, and upon the right of the appellant to seek its reversal here.

This brings us to a consideration of the propriety of the order made below.

The reasons upon which it is based are, that the petitioners have merits which, without laches on their part, have not been presented, and that the allegations of the bill, upon which the chancellor assumed to pass upon those merits, are too vague to support the decree.

First, as to merits.

In 1857, the mortgaged premises were encumbered by a small mortgage held by Mrs. Lamson, and by a second mortgage for $2,000, without interest, made to "Sturges & Co., a firm doing business in the city of New York, and composed of Thomas T. Sturges and James S. Sturges." The premises had been purchased by Thomas T. and James S. Sturges as a home for their half-brother, Joseph H. Sturges, and their mortgage was made and kept alive for the avowed object of preserving the property as his family residence. This is shown both by the letter of James to Mr. Burnham, the complainants' counsel, in January, 1869, and by the testimony, in these proceedings, of Thomas T. Sturges, jun., the son and executor of Thomas, deceased.

In 1869, the necessities of Joseph H. Sturges were such that he required $1,000 to take up the Lamson mortgage, and meet other demands. On application by Mr. Burnham to Sturges & Co., it was arranged that the complainants should loan this $1,000, and should have a first mortgage therefor; and accordingly the loan was made, the Lamson mortgage was paid off and canceled, the $2,000 mortgage was canceled, a mortgage for $1,000, dated January 1st, 1869, and recorded January 6th, 1869, was executed by Joseph to the complainants, and a mortgage for $2,000, without interest, to Sturges & Co., dated February 24th, 1869, was executed by Joseph and recorded. This last mortgage was drawn by Mr.

Burnham at a request by letter, signed " Sturges & Co.," and, in the description of the parties of the second part, was copied from the earlier $2,000 mortgage.　In fact, the firm of Sturges & Co. had been changed in 1864, by taking into it Thomas T. Sturges, jun. and Peter D. Sturges, the sons, respectively, of the older members, but the capital stock remained the property of the fathers only, and it is not claimed that the sons, as members of the firm, ever had any interest in the mortgage.　This change was not known to Mr. Burnham.

In 1875, a further loan of $2,500 was needed by Joseph, and the complainants were willing to grant it, provided a first mortgage for $3,500 could be substituted for their $1,000 mortgage. In order to make this arrangement, Mr. Burnham again called upon Sturges & Co., at their old place of business, and an interview was had, which Thomas T. Sturges, jun., describes as follows:

" He told me about some troubles that Joseph H. Sturges had, out here at Morris Plains, and that he would have to raise some more money on his place, as they were going to sell or do something with his place under judgment, or something like that; and if we would allow our mortgage to stand second, he could get the money from the Mutual Life Insurance Company; I told him I had no objections and was willing to do so, and he then said if I would write him a note or a letter to that effect, it would be sufficient; I wrote such a letter to Mr. Burnham."

The following is a copy of the letter :

" 31 SOUTH ST., NEW YORK, May 20th, 1875.
" F. G. BURNHAM, ESQ., Morristown, N. J.:

" *Dear Sir*—Your note of yesterday, in regard to mortgages on Mr. Joseph H. Sturges's farm at Morris Plains, N. J., came duly to hand and contents noted.

" In reply, I would beg to say that your proposition meets with approval, and all that can be said is, for you to go ahead and carry it out.

" As I understood it, the Mutual Life will then hold a first mortgage of $3,500, and the old firm of Sturges & Co. will hold a second mortgage for the amount of their present one, with accrued interest to date of whenever the agreement is carried out.

" Hoping soon to hear from you that everything has been satisfactorily settled,

" I remain yours resp'ly,

" T. T. STURGES, JUN."

The *approval* referred to in this letter, Thomas explains as being the approval of himself and of James S. Sturges, with whom he consulted about the proposition.

In the meantime, the firm of Sturges & Co. had again changed by the withdrawal of Thomas T. Sturges in 1869 or 1870. Shortly afterwards, in 1870, he had died, leaving his widow and his son Thomas his executors, and his widow during her life, and his six children after her death, his legatees. His estate was large, and its management devolved almost wholly upon Thomas, the widow, as co-executrix, taking but little part therein.

These facts were not known to Mr. Burnham, save that he had received an indefinite impression of some change in the firm.

In accordance with the arrangement, the advance of $2,500 was made by the complainants, a new mortgage for $3,500, dated May 31st, 1875, was executed by Joseph to the complainants, the old $1,000 mortgage was canceled, and a mortgage for $2,000, dated May 21st 1875, in lieu of the other $2,000 mortgage, was signed by Joseph, but, because of Mr. Burnham's impression of some change in the firm, the name of the mortgagee was left blank until he should learn what was to be inserted. For this reason, the $2,000 mortgage of 1869, which had always been in Mr. Burnham's possession, was not then canceled, and the matter, being temporarily laid aside, was then forgotten, and remained *in statu quo* until the complainants' bill for foreclosure was filed, about January, 1877.

The petitioners' merits depend upon whether, under these facts, their mortgage is entitled to priority over the complainants' lien for $3,500. By the bill it is averred, and by the decree it is adjudged, to be subsequent to it.

Beyond all controversy, the complainants advanced the whole $3,500 upon the understanding, arrived at in good faith and with reasonable diligence, that their lien therefor should be first. This gives them a strong claim in equity to insist upon such priority against any who do not stand upon a more equitable footing. As to $1,000 of their debt, no one has any equity against them, because, for so much, their priority, both at law and equity, was undisputed, and if, by the cancellation of their $1,000 mortgage,

that priority at law was lost, through their honest mistake as to the completeness of the arrangment pursuant to which they canceled it, equity would relieve them from the consequences of that mistake against the petitioners, who have not changed their position because of it. It is clear, also, that the complainants' mortgage is entitled to priority for the whole sum, so far as the agreement of James S. Sturges, surviving creditor, and that of Thomas T. Sturges, jun., managing executor of the deceased creditor, can give it, for their consent to such precedence is admitted. Without inquiring into the effect which this agreement of the surviving creditor ought to have upon the interest of his deceased partner, it undoubtedly must defeat his own claim to priority, and hence that of his assignee, who derived his title from James some months after the complainants had loaned their money on the strength of James's agreement. The assignee, therefore, clearly has no merits.

With equal conclusiveness, the contract of Thomas T. Sturges, jun., the managing executor of his father's estate, disposes of the claims of that estate, unless fraud is fastened upon the complainants. For it is well settled that acts done by one of several executors, which relate to the delivery, gift, sale or release of the testator's personalty, are deemed the acts of all, and bind the estate accordingly. *Coote on Mortgages 511; 2 Wms. Exrs. *947; Ex parte Rigby, 19 Ves. 463; Wheeler's Exrs.* v. *Wheeler, 9 Cow. 34; Shreve* v. *Joyce, 7 Vr. 44.*

Here, the testator's widow left the active administration of the estate to her co-executor, as she had a clear legal right to do (*Schenck* v. *Schenck, 1 C. E. Gr. 174*), and when he consented to postpone the lien of the testator's mortgage, and the complainants thereupon advanced their money, that consent was as obligatory as if both executors had signed it. *Stuyvesant* v. *Hall, 2 Barb. Ch. 151.*

Indeed, the avowed purpose for which the mortgage was held, the strait in which the mortgagor stood, and the fact that the surviving obligee and the managing executor so readily agreed to give the complainants priority, make it highly probable that if the executrix did not consent, it was merely because she was

not asked.   Thomas, her son, who was living with her at the time, says he believes he did not consult her.

Is there, then, any ground for charging fraud upon the complainants?

The only fraudulent design which it is possible to suggest is a purpose to deprive the beneficiaries under the will of Thomas T. Sturges, deceased, of their equitable rights in the priority of the $2,000 mortgage.   Mr. Burnham was the sole representative of the complainants in the transaction.   If, therefore, such a purpose is to be attributed to the complainants, it must be because he entertained it.   The first step towards making it out, and a *sine qua non*, is to show that he had knowledge of the existence of such beneficiaries.   But of this fact there is not a particle of proof.   To the contrary, he, on his oath, declares that he had not the slightest notice or information that the mortgage was held by any other parties than Sturges & Co., and that he never heard of the death of Thomas T. Sturges until long after the money had been advanced, and just before the filing of the bill. The oath of this gentleman is entitled to stand against much opposing evidence ; uncontradicted, as it is here, it leaves no shadow of doubt.   The members of this court are unanimously of opinion that his integrity is not to be questioned.   The executor Thomas, also, speaking of his own conduct, says, I believe truly, " what I did, I did in all good faith, supposing it was perfectly right." I see no reason to doubt the honesty of any of the parties in that transaction.

We are therefore quite agreed that by the case made on this petition, these petitioners have no merits.   This renders it unnecessary to discuss the topic of surprise without laches ; but our conclusion upon that point is also against the petitioners.

Finally, it was adjudged below that the averments in the bill, relied on as setting out the complainants' right to preference, are so vague and uncertain that when confessed by the defendant's default and proved before the master, they did not warrant the decree of priority.

The same precision of statement that is required in pleadings at law has never been attained in bills in equity, but such degree

of certainty should be adopted as may give the defendant full information of the case he is called upon to answer. *1 Dan. Ch. Pr. 373; Houghton* v. *Reynolds, 2 Hare 264, and note.*

The bill alleges that the contract to subordinate the mortgage of Sturges & Co. to the complainant, was made by that firm, *or* by their survivors and legal representatives, and then avers that the survivor of the firm was James S. Sturges, and that the legal representatives of the deceased partner were his executors, Susan and Thomas T. Sturges, jun., and these persons only are made defendants on behalf of said firm. These statements fairly amount to an assertion that the contract was made by the firm, or by James and the executors of Thomas. The only uncertainty about it is, that it does not specify which of the two contracted. Such alternative averments are not admissible by the strict rules of common law pleading, but reference to any book of equity forms will show that there they are not infrequent. In actions at law against the survivors of a firm, or against executors, the declaration would state the several possible promises in separate counts, but, upon the whole pleading, the defendant would be apprised of the ground of suit with no more accuracy than this bill affords. I think, even on demurrer, a court would hesitate to adjudge this complaint bad for uncertainty.

But where, as here, after regular proceedings against the defendants, the party has been put to his proofs, and a final decree in his favor has been made and executed, it is unprecedented to permit such an objection to prevail. Objections to pleadings which involve no substantial interests are not allowed even upon final hearing. *Freeman* v. *Scofield, 1 C. E. Gr. 28.*

And it is then too late to complain of mere want of precision in the bill. *Smith* v. *Kay, 7 H. L. Cas. 750.*

The order appealed from should be reversed, with costs.

*Decree unanimously reversed.*