THE PEOPLE, *ex rel.* WILLIAM EAGLE, *v.* JOHN KEYSER, Register of the City and County of New York.

The right to the money secured by a mortgage being personal, either one of several mortgagees can receive the same, and discharge the right to recover it of the mortgagor.

Where a mortgage was made to M. and W. describing them as "executors of E.," and the money was made payable to them or their "executors, administrators or assigns;" *Held*, that after the death of M., upon the refusal of his executors to unite with W. in the execution of a satisfaction piece, the certificate of W. as surviving mortgagee, duly acknowledged, showing payment of the mortgage, whether the mortgage belonged to W. and M. as private persons, or as executors, entitled the mortgagor to have it discharged upon the record.

The statute respecting the cancellation of the records of mortgages does not require that the satisfaction certificate shall be signed and acknowledged by the representatives of the deceased mortgagee, in such a case, as well as by the survivor, to authorize the register to cancel the mortgage.

THE relator made a motion, on affidavit and notice, at a special term of the Supreme Court in the city of New York, for a *writ of mandamus* to be directed to John Keyser, register of the city and county of New York, commanding him to receive on file in his office a satisfaction piece of a mortgage, and to cancel and discharge the mortgage of record.

The mortgage had been recorded in the office of the register, and was made by the relator to "Samuel Maycock and John Wright, executors of the estate of James Espie, deceased, of the second part," to secure the payment of $1200 to "the said party of the second part, his executors, administrators or assigns." The affidavit showed that Maycock had died; that the relator paid the mortgage to Wright, the surviving mortgagee and executor, who executed, acknowledged and delivered to him a satisfaction piece of the mortgage; that the executors of Maycock refused to unite in the execution of the satisfaction piece, on the ground that they were in no way interested in the mortgage; and that the mortgage debt did

not belong to the estate of their testator. That the defendant, as register, refused to receive the satisfaction piece, or to place the same on file in his office, or to cancel or discharge of record in his office the mortgage, on the ground that the executors of Maycock had not united in the satisfaction piece.

The motion for a mandamus was denied. The Supreme Court, at a general term in the first district, reversed the order denying the motion, and made an order that a mandamus issue, commanding the defendant, as register, to receive and file and record in his office the satisfaction piece. But the court would not require the register to discharge the mortgage on the record.(a) The relator appealed from the order, so far as it did not direct the writ to command the register to do that act.

The case was argued by *M. S. Bidwell,* for the appellant, and submitted upon points by *Wetmore & Bowne,* for the respondent.

BALCOM, J. According to the decision of this court in *Peck* v. *Mallams,* (6 Selden, 509,) the words "executors of the estate of James Espie, deceased," annexed to the names of the mortgagees, must be held to be merely descriptive of the persons to whom the mortgage was given; and as the money mentioned in the mortgage was payable to Maycock and Wright, their "executors, administrators or assigns," the register was bound to regard the mortgage as the private property of the mortgagees, their executors, administrators or assigns. His duty would have been different if the mortgage on its face had showed it was taken by Maycock and Wright *as* executors of Espie, for a debt due his estate. (*Bogert* v. *Hertell,* 4 Hill, 492.)

There can be no doubt that where two executors take an obligation to themselves jointly, as representatives of their testator, for a debt belonging to his estate, one of them can

(a) See 39 Barb. 587, S. C.

receive pay and lawfully discharge the obligation, whether his co-executor be dead or alive. (Willard on Executors, 209, 269; 4 Hill, 492; *Stuyvesant* v. *Hall*, 2 Barb. Ch. R. 151; *Douglass* v. *Satterlee et al.* 11 John. 16; *Murray* v. *Blatchford*, 1 Wend. 583.) One of two administrators can do the same. (See authorities *supra.*) A surviving trustee may do this. (Hill on Trusts and Trustees, 3d Am. ed. 442; Lewin on Trusts and Trustees, Law Library, 4th series, vol. 72, p. 284.)

The Supreme Court of Pennsylvania held, in *Penn* v. *Butler*, (4 Dallas, 354,) where two persons sold real estate which belonged to them as tenants in common, and took bonds and mortgages in their joint names for the purchase money, that the surviving obligee and mortgagee "was entitled to the possession of the joint securities, and that he might recover the amount." The same court held, in *Bowes* v. *Seeger*, (8 Watts & Serg. 222,) where a mortgage was assigned to two persons, that payment of it to one of such persons discharged the debt; and that the receipt of the one to whom the payment was made was evidence to show that the debt was discharged.

KENT, Ch. J. in delivering the opinion of the court in *Pierson* v. *Hooker*, (3 John. 68,) said: "It is a general principle of law, that where two have a joint personal interest, the release of one bars the other, (*Ruddack's case*, 6 Co. 25;) and I can not perceive that the case of copartners in trade forms an exception to the general rule." The court held in that case, that the release of a debt due a copartnership by one of several partners, by a writing under his hand and seal in the name of the copartnership, was binding on all the partners.

It was held in *Austin* v. *Hall*, (13 John. 286,) that in an action by tenants in common, for a trespass on land of which they were the co-heirs, a release by one of the plaintiffs was a bar to the action.

*Fitch & Buck* v. *Forman*, (14 John. 172,) was an action

on a covenant, by which the defendant bound himself to do a certain act by a certain day. Buck afterwards, by a writing under seal indorsed upon the original agreement, released the defendant from a performance within the time mentioned in the agreement, and extended the time of performance. And the court held that such release was a bar to the action, the breach of the covenant assigned being the non-performance of the act by the day mentioned in the agreement. THOMPSON, Ch. J. in delivering the opinion of the court, said: "They [the plaintiffs] had a joint personal interest, and the release or modification by one would bind the other."

Judge COWEN laid down the rule in his treatise, (2 Cow. Tr. 2d ed. 772,) that, "A release by one of several persons, having a joint demand, is valid against all, even though such demand be the proper subject of trespass or case, as for a wrong." He cited the cases in Johnson's Reports, (*supra.*)

The principle on which these cases were determined, authorized either Maycock or Wright to receive the money for which the mortgage was given, and to satisfy the same, though it was their private property, and held by them as tenants in common; and upon the same principle Wright, as surviving mortgagee after the death of Maycock, could lawfully receive the money mentioned in the mortgage and execute a certificate, satisfying the mortgage, which would authorize the register to discharge the same upon the record.

The right to the money, secured by the mortgage, being personal, (a mere chose or thing in action,) either mortgagee could receive the same and discharge the right to recover it of the mortgagor.

BAYLEY, J. said, in *Barton* v. *Williams*, (5 Barn. & Ald. 395,) "There may be cases in which the indivisible nature of the subject matter of the tenancy in common may raise an implied authority in one to sell the whole." A mortgage is indivisible, and though payable to two persons jointly, the right to receive or recover the money due upon it is single. This right is not divided by the death of one of the mort-

gagees. Hence the death of Maycock did not affect the right of the surviving mortgagee to keep the mortgage in question, and receive the money due on it and satisfy it.

It is laid down in Graham's Practice, that "On the death of the party with whom the contract was made, if the covenant or promise were to the deceased and another, jointly, the action must be brought by the survivor or his representatives, without joining the representatives of the deceased." (Gra. Pr. 2d ed. 90; also see 17 N. Y. Rep. 354; Cow. Tr. 2d ed. vol. 1, p. 553; 1 East, 497; 4 Dallas, 357.)

The Supreme Court of Maine held, in *Williams* v. *Hilton,* (35 Maine Rep. 547,) that "a suit upon a mortgage, to obtain a foreclosure, may be brought and maintained by the surviving mortgagee." But it has been held in Massachusetts that if a mortgage be given to two persons to secure their several demands, and such demands and their different amounts are specified in the mortgage, each has a right to enforce his claim under the mortgage in a form adapted to his case; and that the surviving mortgagee can not maintain an action on the mortgage, to enforce payment of the debt due to the deceased mortgagee. (*Burnett* v. *Pratt,* 22 Pick. 556.) That case was correctly decided, because the mortgage itself divided the money between the mortgagees; so the mortgagor knew from the mortgage how much money belonged to each mortgagee.

But if it should be conceded that our code now requires the representatives of the deceased mortgagee to join with the survivor in an action for the foreclosure of a mortgage taken by the deceased and the survivor in their joint names, as tenants in common, such requirement would not take away the common law right of the survivor to receive the money due upon the mortgage, when tendered to him, and satisfy the mortgage by a proper instrument in writing, and thus compel the representatives of the deceased mortgagee to look to him for the money, if it, or any portion of it, belonged to such mortgagee. If the code required the representatives

of a deceased partner to join with the survivor in bringing actions to recover debts due the copartnership, the survivor would still retain his common law right to receive payment of such debts, and completely discharge them by receipts or certificates.

It seems to me there can be no doubt that the payment of the mortgage to the surviving mortgagee discharged the mortgage, so that no action could be maintained on it by the representatives of the deceased mortgagee, or by them and the survivor, or by either.

The only remaining question is, whether the statute respecting the cancellation of the records of mortgages requires that the satisfaction certificate shall be signed and acknowledged by the representatives of the deceased mortgagee, as well as the survivor, to authorize the register to cancel the mortgage upon the record.

The statute is, that "Any mortgage that has been registered or recorded, or that may hereafter be recorded, shall be discharged upon the record thereof, by the officer in whose custody it shall be, whenever there shall be presented to him a certificate signed by the mortgagee, his personal representatives or assigns, acknowledged," &c. (1 R. S. 761, § 28.) This statute does not mean that *all* the mortgagees, or their personal representatives, must execute and acknowledge the satisfaction certificate to authorize the officer, in whose custody the record of the mortgage shall be, to record it, and discharge the mortgage upon the record; provided a satisfaction certificate, signed and acknowledged by one of the mortgagees, discharges the mortgagor from all claim of each and every of the mortgagees and their representatives, upon the mortgage. (See 23 How. Pr. Rep. 223; 2 Barb. Ch. Rep. 151.) The statute respecting canceling dockets of judgments, is that the clerk may cancel and discharge them, "upon filing with him an acknowledgment of satisfaction, signed by *the party* in whose favor such judgment was obtained, or by his executors or administrators, duly authenti-

cated," &c.   (2 R. S. 262, § 22.)   But who ever heard that it was necessary that *all* the parties, in whose favor a joint judgment is recovered, should sign and acknowledge a satis-faction certificate to authorize the clerk to cancel and dis-charge the docket ?   The signing and acknowledging of the proper satisfaction certificate by *one* of the parties, who ob-tained such a judgment, has always been considered sufficient to justify the clerk in canceling and discharging the docket of it.   And it is not at all probable that every body has been mistaken respecting the legality of this mode of satisfying judgments.   I am not prepared to admit there has been an error touching it; for I think there has not been any.

For these reasons I am of the opinion the register should have received and recorded the satisfaction certificate, show-ing that the mortgage had been paid, and duly discharged the mortgage upon the record thereof.

It follows that the portion of the order of the general term of the Supreme Court appealed from should be reversed, and a mandamus ordered to be issued as moved for by the relator.

I think no costs should be awarded to either party.

SELDEN, J.   If the relator's mortgage furnished evidence upon its face that it belonged to the mortgagees as executors of the will of Mr. Espie, then the certificate of Wright, one of the executors, duly acknowledged, showing that it was paid, entitled the relator to have it discharged upon the record.   During the lives of both executors, either one had power to discharge a mortgage belonging to them as execu-tors; (*Wheeler* v. *Wheeler*, 9 Cowen, 34; *Stuyvesant* v. *Hall*, 2 Barb. Ch. 151; *Bogert* v. *Hertell*, 4 Hill, 492; Williams on Executors, 3d Am. ed. 810;) and on the death of one, all the rights and powers of both vested in the sur-vivor.   (*Hudson* v. *Hudson*, Cas. Temp. Talbot, 127; Wil-liams on Executors, 814; Addison on Contracts, 362.)

These positions are not questioned by the repondent's counsel, who do not deny the sufficiency of the discharge in

case the mortgage was shown to be the property of the executors in their representative character; but they insist, that by its terms the mortgage appeared to be the private property of the executors. The terms of the mortgage do not warrant this conclusion. The only case cited in its support is that of *Peck* v. *Mallams*, (6 Seld. 509.) What was said in that case, in reference to a similar mortgage, related rather to the rules of pleading than to the rules governing the interpretation of contracts. It was said in answer to the defendant's objection, that the plaintiff did not make title to the bond and mortgage *by his complaint.* By the strict rules of pleading in force when the pleadings in that case were made, when no intendments in favor of the pleading were allowed, (2 H. Bl. 530; 1 Hill, 74; 2 Mylne & Craig, 422; 2 Phillips, 28,) an allegation that a promise was made by A. to B., executor &c. of C., would not sustain an action in favor of B. in his representative character, the words "executor &c." being treated merely as descriptive of the person. (2 Chitty on Pleading, Springfield ed. 1844, 103, note b; 5 East, 150; 5 Binney, 16; 2 Barb. 368.) All that was involved, upon this subject, in the *judgment* in *Peck* v. *Mallams*, was the rule of pleading, and I regret being compelled to say that the syllabus of the case in the report, (for which I am responsible,) erroneously states the rule as applicable to the interpretation of the contract. The judge who delivered the opinion merely expressed a doubt in that respect, the case not requiring a decision of the question. (6 Seld. 537, 538.)

In determining the effect of contracts, such strictness of interpretation as that applied to pleadings is not admissible; language sufficiently definite to show the intention of the parties being all that is required. Looking at the language of the mortgage in this case, as furnishing evidence of that intention, it would seem very clear that the mortgage was made to the mortgagees as a contract with them in their representative, and not in their individual characters. No

other meaning can be given to the language, unless we assume that the words, "executors of the estate of James Espie, deceased," were added to the names of the mortgagees, in a contract having no relation to the affairs of the estate, for the sole purpose of identifying the parties. I venture the assertion that such an addition to the names of parties in a private contract, for the mere purpose of description, was never known, and it would be very unreasonable to hold that such was the object of the addition in this case. If the decision in *Peck* v. *Mallams* were to be regarded as declaring a rule for the interpretation of contracts, instead of a rule of pleading merely, it could not be reconciled with the late cases in this court of *Babcock* v. *Beman*, (11 N. Y. Rep. 200,) and *Chouteau* v. *Suydam, adm'r*, (21 id. 179.) My conclusion, therefore, upon this point is, that the mortgage upon its face appeared to be the property of the executors in their representative character, and was properly discharged by the certificate of the survivor.

If, however, a different interpretation be given to the language of the mortgage, and it is held, by its terms, to have belonged to Maycock and Wright in their private character and not as executors, the certificate and acknowledgment of Wright would be equally effectual for its discharge. Any one of several joint payees of a note, bond or other personal obligation, has a right to receive payment of, and to discharge such obligation. (*Pierson* v. *Hooker*, 3 John. 68; *Bulkley* v. *Dayton*, 14 id. 387; *Murray* v. *Blatchford*, 1 Wend. 583; *Stuyvesant* v. *Hall*, 2 Barb. Ch. 151.) KENT, Ch. J. in *Pierson* v. *Hooker*, says: "It is a general principle of law, that where two have a joint personal interest, the release of one bars the other." If there are any exceptions to this rule the subject of the present controversy is not among them. According to the decisions in this state, a mortgage is but a security for a debt, and is treated as a mere personal contract. (*Green* v. *Hart*, 1 John. 580, 590; *Runyan* v. *Mersereau*, 11 id. 534; *Martin* v. *Mowlin*,

2 Burr. 978; Browne on the Stat. of Frauds, § 65.)   So far
as the mortgagor is concerned, all the mortgagees are to be
regarded as one person, and he has a right to deal with each
as representing all.   This was held, as between a vendor and
two vendees of land, in *Carman* v. *Pultz*, (21 N. Y. R. 550,)
and no reason is perceived why the principle is not equally
applicable between a mortgagor and mortgagees.   By accept-
ing a joint mortgage, each mortgagee gives to every other the
power which this principle implies, as each member of a
copartnership clothes each of his copartners with power to
bind him in all matters within the scope of their joint busi-
ness.   Except for the purpose of receiving payment and
acknowledging satisfaction, the powers of an ordinary joint
obligee over the obligation would not probably correspond
with those of a partner; but to that extent they must be
identical, otherwise the obligor could never safely pay to one
of several obligees.   The certificate of one mortgagee, there-
fore, if both were living, was sufficient to entitle the mort-
gagor to a discharge of his mortgage upon the record.   The
practice in the register's office in the city of New York, it
seems, has been otherwise, and the decisions of the Supreme
Court in the first district have been in accordance with that
practice.   (*The People* v. *Miner*, 32 Barb. 612.)   In some
other counties the practice has been to discharge mortgages
upon the certificate of one of several mortgagees, and great
confusion would arise from a decision by this court that such
discharges were ineffectual.

The death of one of two joint mortgagees does not deprive
the other of the right to receive payment of, and to discharge
a mortgage held by both, but renders such right exclusive in
the survivor.   (Addison on Contracts, 285.)   What is said
in the books to which we are referred by the respondent's
counsel, against the right of the survivor in such cases to
take the whole money, relates to the equitable and not to
the legal right.   (*Rigden* v. *Vallier*, 2 Vesey, sen. 258;
2 Story's Eq. Jur. § 1206; 2 Powell on Mortgages, 699, 700.)

There was never any doubt that the entire legal interest remained in the survivor. (1 Chitty on Pleading, 19, 20; *Rolls* v. *Yate,* Yelv. 177, and note 1.) The only doubt was, whether the survivor did not take the whole interest, legal and equitable, according to the rule of survivorship applied to a joint tenancy in lands; but it was finally held, the case of *Petty* v. *Styward,* (1 Eq. Cas. Abr. 290,) being the leading case, that although the entire legal interest vested in the survivor, he was to be regarded in equity as a trustee for the personal representatives of deceased parties for their equal shares. (2 Fonbl. Eq. 103, and notes.) I believe it was never questioned that the party having the entire legal interest in any demand, in the absence of fraud, could discharge it.

Whether, therefore, the mortgage belonged to the two mortgagees as private persons, or as executors, and whether the register was or was not bound, on the evidence which was before him, to take notice of the death of one of them, the certificate of the other, duly acknowledged, showing payment of the mortgage, entitled the mortgagor to have it discharged upon the record. (3 R. S. 5th ed. 57, 58, §§ 60, 61.)

The order appealed from, therefore, should be modified, so as to direct the issuing of a mandamus to the defendant, commanding him to receive and record in his office the certificate of payment of the mortgage of the relator, mentioned in the affidavits and proceedings in this case, and also to discharge such mortgage upon the record thereof.

Costs in cases of this kind are in the discretion of the court. (3 R. S. 5th ed. 909; Code, § 471; 20 N. Y. Rep. 529; Code, § 306.) As the defendant is a public officer, and appears to have acted in perfect good faith, and in accordance with a prior decision of the Supreme Court, he should not be charged with costs.

All the Judges concurring,

                                           Ordered accordingly.