BENJAMIN H. STINSON & others *vs.* CITY OF BOSTON.

Suffolk.    March 13. — Sept. 3, 1878.    COLT & SOULE, JJ., absent.

A tax was assessed by a city, on May 1, to five persons jointly, as owners or trustees of a ship. The legal title to the ship was on that day in these persons, in trust to complete the ship and sell her for the benefit of themselves and others having claims against her. All the trustees, on that day, did business in the city, but were not partners, and only three of them resided there. The vessel was at a wharf in the city, at which the trustees had hired a berth, with the right to pass over the wharf to the ship, and to use the part of the wharf near the ship for storage. *Held,* that, although the three resident trustees were liable to taxation for their interests in the vessel, they could not, under the Gen. Sts. *c.* 11, § 12, be jointly taxed with the other trustees; and that the tax was illegal and void.

CONTRACT by Benjamin H. Stinson and four others, to recover back a tax assessed on May 1, 1876, to them as "owners or trustees" of a certain "new ship," and paid by them under protest. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on an agreed statement of facts in substance as follows:

On November 10, 1875, the plaintiffs, who had certain claims against a vessel, then on the stocks in East Boston, and owned by Frank F. Gorham, acting for themselves and other like claimants, entered into an agreement with Gorham and the other claimants, by which they agreed, in consideration of the conveyance of the vessel and of the release of such claims to themselves, to complete, launch and fit her for sea, and then sell her to the best possible advantage, or, according to their best discretion and to the best advantage, sell her as she lay, or at some other stage of the work toward fitting her for sea, and apply the

proceeds of the sale to the payment of the several claimants and of Gorham in an order named.

All the claimants, including the plaintiffs, either had liens against the vessel for labor and materials furnished in her construction, or were the assignees of a mortgage upon the vessel, or had advanced money to build her.

The ship was launched on April 11, 1876, at which time her hull had been completed by the plaintiffs, but her masts were not in. Everything below decks was complete. Her lower masts were all put in before May 1, 1876, but the rest of her spars and other rigging and sails were not put up until the latter part of July, 1876. In the early part of April, 1876, the plaintiffs made an arrangement with the owners of a wharf at East Boston, for the vessel to have a berth at that wharf upon being launched, and to pay $4.50 a day therefor, so long as the vessel should lie there. The wharf was a capacious one, capable of accommodating eight or more ships. By a berth is meant a place for a ship to lie alongside of a wharf where there are all the facilities from the shore and by water to take in ballast, stores, spars, rigging, and anything that may be needed to complete the ship and fit her for sea. The hiring a berth carries with it the right to use and pass over the strip of the wharf limited by the length of the ship, and to occupy that portion with whatever material may be brought to be put into the ship. Nothing was put aboard the ship while she lay at the wharf, until after she was sold. The vessel, having been launched, and having had her lower masts put in, was hauled to the wharf, and lay there on May 1, 1876. On that day, the upper masts and yards were in the yard of the spar-maker, in Boston, finished and ready to be put up. On July 12, 1876, the plaintiffs sold the ship by public auction, in accordance with the power given them in the agreement.

On May 1, 1876, the plaintiffs were not partners, but all of them had separate places of business in Boston, and three of them resided there, the others residing in different towns in the Commonwealth.

The tax assessed and collected was based upon the whole vessel, and upon the entire taxable value thereof, so far as the vessel was constructed on May 1, 1876.

No sworn return or list was made by the trustees or any parties interested in the ship, and no petition made for an abatement of the tax.

If, upon the foregoing facts, the plaintiffs, or any of them, were entitled to maintain this action for the whole or any part of the tax, judgment was to be entered for such of the plaintiffs and for such sum as they or any of them were entitled to recover, with interest; otherwise, judgment for the defendant.

*F. Goodwin*, for the plaintiffs.

*H. W. Putnam*, for the defendant.

AMES, J. By the law of this Commonwealth, "all personal estate within or without this state," with certain exceptions well defined by statute, "shall be assessed to the owner in the city or town where he is an inhabitant on the first day of May." Gen. Sts. *c*. 11, § 12. At the date of the tax in this case, the legal title to the ship was in these plaintiffs. It is true that they held the property in trust, for the benefit of themselves and others, but, within the limits and for the purposes of the trust, they had an absolute right to dispose of the vessel at their discretion. But, besides holding the legal title to the property, the plaintiffs were themselves creditors and claimants, entitled, in different proportions and degrees, — some as holders of liens, others as assignees of a mortgage, or as lenders of money towards the building of the ship, — to share in the distribution of the fund that should be derived from the intended sale. We therefore have no doubt that they had an interest in the vessel that was liable to taxation.

But as only three of them resided in Boston, and two of them resided elsewhere, the claim of the plaintiffs is that the city of Boston had no right to assess a tax upon the five jointly, and that this tax assessed upon them as joint owners, in such a state of facts, is illegal and void. It cannot be said that the owners were inhabitants of Boston at the date of the assessment. *Lee v. Templeton*, 6 Gray, 579. The legality of the tax against the five therefore cannot be made out, unless the case can be brought within some of the many clauses in the section above cited, under which a tax may be assessed without regard to the owner's place of residence. By the first of these clauses, it is provided that "all goods, wares, merchandise and other stock in trade,'

" in cities or towns within the state, other than where the owners reside," " shall be taxed in those places where the owners hire or occupy manufactories, stores, shops or wharves." But we think it impossible to say that the property in the hands of these trustees can be described as " stock in trade " within the meaning of the statute. It was entrusted to them, not for any general purposes of trade or business, but only that it might be put in a condition for sale, and sold for the benefit of creditors. But independently of this difficulty, there has been no such hiring or occupation of the wharf by these plaintiffs as to satisfy the requirements of the statute. It was decided in *Lee* v. *Templeton, ubi supra,* that he only can be understood to occupy an estate within the meaning of the act, who is in the actual possession and has the use and efficient control of it, — such an occupation as one who owns or hires would ordinarily have. There was no occupation of the wharf as a place of business. All that can be said is merely that the vessel lay at the wharf, and there was an express or implied license to pass over the wharf in going to or returning from her. It has been decided that mere storage of lumber at a yard is not such an occupation as the statute intends. *Loud* v. *Charlestown,* 103 Mass. 278. And in *Huckins* v. *Boston,* 4 Cush. 543, it was decided that having a privilege in a counting-room, and having goods stored, in a town other than that of the owner's residence, do not amount to such a hiring and occupation of a store, shop or wharf, as will render him taxable in such town. We think that that decision covers the present case, so far as this point is concerned.

Section 15 provides, in substance, that partners in business, though residing in different places, may be jointly taxed under their partnership name in the place where their business is carried on, for all personal property employed in their business, except ships or vessels. That is to say, for the purposes of taxation a firm may be considered as a single person, and its place of business as its place of residence. But § 16 expressly provides that ships or vessels owned by a copartnership shall be assessed to the several partners in their places of residence, proportionally to their interests therein. We find nothing in the statute from which it can be inferred that joint owners of ships or vessels, who are not " partners in mercantile or other busi

ness," are liable to be taxed jointly at a place where they do not reside, instead of being severally assessed in their respective places of residence, proportionally to their interests in the property.

It follows that the tax was illegal and void. The defendant does not succeed in bringing it within any of the exceptions to the general rule that the owner must be taxed at his place of residence. The case of *Davis* v. *Macy*, 124 Mass. 193, upon which the defendant relies, was only to the effect that a person who is taxed for the whole of property, in which he is liable only for an undivided share, must seek his remedy by claiming an abatement. The case at bar does not present a complaint of over-valuation, but of a tax which the city had no authority to impose. The result must therefore be

*Judgment for the plaintiffs.*