32  321
92   35
32h 321
51ad300

## MARIA J. MYERS, AS EXECUTRIX, ETC., OF AUSTIN MYERS, DECEASED, RESPONDENT, v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, APPELLANT.

*Principal and agent — when the principal is chargeable with knowledge of all facts known to the agent — he will be held to have ratified wrongful acts of the agent if he does not at once repudiate them.*

The plaintiff was the executrix and sole legatee of Austin Myers, who died on November 9, 1870. On December 30, 1870, one Fitch, who was the cashier of the Mechanics' Bank and the general agent and manager of the Myers' estate, took from the plaintiff a power of attorney expressly authorizing him, in her place and stead as executrix, legatee and individually, "to sign, indorse and make and deliver checks and drafts, promissory notes, receipts and all other vouchers and papers necessary and proper in and about settling the affairs pertaining to the estate of said Austin Myers, deceased, and to settle, compound, compromise, extend payment of and receive payment of all claims, debts, demands due, or to become due, to said estate." On June 5, 1873, he took from her another power of attorney authorizing him to satisfy and discharge all mortgages made to Myers and to the plaintiff, and to demand, receive and receipt for the moneys due, or to become due, thereon.

In June, 1869, Myers, who held the legal title to a bond and mortgage for $75,000 given by one Farley, assigned the same to the defendant as collateral to a loan of $30,000 made by it upon the bond of Myers and one Nathan Randall. In June, 1871, Nathan Randall assigned his interest in the Farley mortgage to his son Charles, who died in June, 1873, leaving a widow, to whom letters of administration were issued. Notice was given to the defendant on behalf of Charles and of his widow that they claimed a half interest in the mortgage. Subsequently the defendant was notified by the attorney for the widow of Charles Randall that there was no objection to the mortgage being assigned to Fitch & Ellis, and on April 28, 1874 in pursuance of a written request signed with the plaintiff's name by Fitch, the bond and mortgage were, upon the payment of the amount due to the defendant, assigned by the defendant to Fitch & Ellis. Fitch signed a note with the plaintiff's name and borrowed from his bank money with which to pay the loan due to the defendant, and subsequently paid the note from collections made upon the bond and mortgage. The whole amount due upon the Farley mortgage was paid to Fitch & Ellis, who deposited some $4,000 to the credit of the plaintiff and converted the residue to their own use. The plaintiff had knowledge of the assignment of the bond and mortgage and the payments thereon as early as January, 1877.

In this action, brought in 1879, she sought to recover from the defendant the amount lost, on the ground that the defendant should not have assigned the bond and mortgage to Fitch & Ellis.

*Held*, that the evidence was sufficient to justify a finding that the Randalls owned

a half interest in the mortgage, and to that extent it was justified in assigning it as requested by his representatives.

That if Fitch exceeded the authority conferred upon him by the plaintiff in taking an assignment of the bond and mortgage to himself and Ellis individually, the plaintiff was chargeable with knowledge of his acts and must be held to have ratified the same by her neglect to at once repudiate and disown them.

That she was not entitled to recover.

APPEAL from a judgment, in Onondaga county, in favor of the plaintiff for $74,953.84, entered on the report of a referee, and also from an order granting an extra allowance.

*Julien T. Davies,* for the appellant.

*George N. Kennedy,* for the respondent.

HARDIN, J.:

Austin Myers died November 9, 1870, leaving his last will and testament, in and by which he appointed the plaintiff his executrix, and in and by which he made the plaintiff his sole legatee.

After the will was admitted to probate, as it was November 24, 1870, she took letters testamentary and assumed the duties of executrix. Testator held in June, 1869, the legal title to a bond and mortgage of one Farley for $75,000 on property situated on Tenth avenue and Seventy-seventh street, New York, and he applied to defendant in July, 1869, for a loan of $30,000, which defendant made, taking therefor the bond of Myers and one Nathan Randall, and an assignment or pledge of the Farley bond and mortgage as security for the loan of the $30,000 so advanced by defendant.

In June, 1871, Nathan Randall assigned to his son Charles M. Randall, his interest in the Farley bond and mortgage, to secure and pay out of the proceeds thereof certain debts of N. Randall. In June, 1873, Charles M. Randall died and letters of administration were issued upon his estate to his widow, Laura S. Randall. In September, 1871, in behalf of Charles Randall, Mr. Main, as attorney, gave defendant notice of Randall's supposed interest in the bond and mortgage, and forbade the payment of any moneys arising out of the mortgage to the Myers' estate, or at most more than one-half of the proceeds, and notice to that effect was given to the Myers' estate and to Thomas B. Fitch, the agent thereof, in May, 1872. Negotiations were had as to the bond and mortgage

between the parties named and the defendant.  In March, 1874, Mr. Main gave notice to defendant that an adjustment had been made, and that certain moneys in the hands of defendant arising from the Farley bond and mortgage might be paid over, and certain moneys were paid over to Fitch & Ellis, as to which defendant has not been found liable.  On the 27th day of April, 1874, Mr. Main informed defendant, in behalf of Mr. Randall, that a satisfactory arrangement had been made with the representative of the Myers' estate, and that "no objection existed to the defendant assigning the bond and mortgage to Fitch & Ellis, and the assignment executed by Austin Myers to N. Randall of one-half the Farley bond and mortgage was delivered to Fitch."  On the following day, to wit, April 28, 1874, an instrument in writing was delivered by Fitch to defendant, which read, viz. ·

"NEW YORK, *April* 28, 1874.

F. S. WINSLOW, Esq., *President, etc.:*

DEAR SIR. — Please to assign to Thomas B. Fitch and James M. Ellis, of Syracuse, N. Y., the bond and mortgage of Warren Farley to Austin Myers for $75,000 held by you as collateral to a loan of $30,000 and oblige,

Yours very truly,

MARIA J. MYERS, *Executrix.*

By THOMAS B. FITCH, *Attorney.*"

After this was presented to defendant, Fitch on the 29th of April, 1874, paid to defendant $30,000 and interest and received from defendant an assignment of the bond and mortgage to Fitch & Ellis. The $30,000 was paid to defendant by a check drawn by the Mechanics' Bank of Syracuse on the Continental Bank in New York, signed by Fitch, who was cashier of the Mechanics' Bank of Syracuse.  When Fitch returned to Syracuse he reimbursed the Mechanics' Bank by executing Mrs. Myers' note and having it discounted and held by the Mechanics' Bank until it was subsequently paid up out of moneys derived by collections made on the Farley bond and mortgage.  The note was renewed until it was finally paid, July 8, 1875, with interest, through the acts and directions of Fitch, who was then in charge of the Myers' estate; and in the Myers' pass-book with the bank on that day was an entry of

the funds to pay the note and interest, to wit, $33,488.24, and the estate in the pass-book was credited with $36,621.31, that being the amount paid by Farley to Fitch on his bond and mortgage. That day Fitch & Ellis executed a satisfaction of the bond and mortgage dated 29th of June, 1875. The entire money, the amount of principal and interest, was collected from Farley and used so much, as stated above, to pay the bank, out of which the Myers' note was paid, and the balance in and about the business of Fitch & Ellis, who were then copartners in a shoe enterprise connected with the Auburn State prison. They paid back to Mrs. Myers, or the estate, $4,000 by depositing it in the bank to the credit of the Myers' estate. The balance never was returned to plaintiff and she seeks to recover it from defendant. Fitch became insolvent and died September, 1879, and Ellis is insolvent. The referee has reported against the defendant, holding that it was its duty to "restore and reassign the bond and mortgage of Farley to the plaintiff on her demand as executrix and personal representative of Myers." This action was brought in November, 1879. There was some evidence given upon the hearing before the referee tending to prove that Nathan Randall had some legal or equitable interest in the real estate covered by the Farley mortgage, and that he was the owner of one-half of the Farley mortgage, as between him and Myers, and that Myers executed an assignment of one-half of the bond and mortgage to Randall, and that Randall thereafter assigned to his son Charles M. Randall, and we think that the referee might have found that Laura S. Randall, as administrator of Charles M., had at one time an interest in the Farley bond and mortgage, and as such owner was authorized to assent, through Mr. Main, his attorney, to an assignment of such interest to Mr. Ellis, her uncle.

The evidence is not entirely clear as to the contents of the paper which Austin Myers executed to Nathan Randall, and it is not therefore made clear that Myers was the only one entitled to redeem from the defendant the Farley bond and mortgage. The circumstances disclosed would seem to warrant a conclusion that the defendant acted in good faith and upon sufficient apparent authority when it assigned the one-half of the Farley bond and mortgage to Ellis. We think the referee erred in refusing to find that Myers

and Randall were "the owners and holders, each to the extent of one undivided half," of the bond and mortgage, and in treating Myers, or his estate or the plaintiff, as entitled to call upon the defendants to make good the one-half of the moneys which would have passed by the assignment from Myers to Randall. The consent of Mann, attorney for Mrs. Laura Randall, as administrator, was sufficient to authorize the assignment by defendant to Ellis of the one-half interest, and upon the evidence before the referee we think he would have been warranted in finding that the authority of Mrs. Randall was sufficient to protect the defendant from any claim of the plaintiff by reason of one-half of the bond and mortgage.

When Fitch entered into the business of managing the Myers estate, he was in good credit and standing financially, and received full charge of the estate. He took from the plaintiff on December 30, 1870, a power of attorney which expressly authorized him in her place and stead as such executrix, legatee and individually " to sign, endorse and make and deliver checks and drafts, promissory notes, receipts *and all other vouchers and papers, necessary and proper* in and about settling the affairs pertaining to the estate of said Austin Myers, deceased, and to settle, compound, compromise, extend payment of and receive payment for all claims, debts, demands due or to become due to said estate or to me (her)." * * * Under this power of attorney he commenced to act in the management of the estate. He continued in charge of the estate until his death in August, 1879, being assisted by one or two clerks. He continued cashier of the Mechanics' Bank, and Ellis was its president. On the 5th of June, 1873, Fitch took another power of attorney from the plaintiff which authorized him "to satisfy and discharge all mortgages made to Austin Myers now deceased, and to satisfy any and all mortgages made to her (me) individually * * * and to demand, *receive and receipt for any and all moneys* payable or to become due and payable on any or all such above described mortgages as they shall become due," and with power of substitution. Under these powers of attorney Fitch had ample authority to cancel the mortgage in question if it had been assigned to the estate. After it was assigned to Fitch & Ellis he still alone had power to receive all the money, as apparently he did receive it; and receipt

for it and to satisfy the mortgage, so far as to bind the plaintiff. Though she was owner of the whole mortgage he could so satisfy it either if assigned to him and Ellis or to the estate. (*People ex rel. Eagle* v. *Keyser*, 28 N. Y., 226; *Leitch* v. *Wells*, 48 id., 601.) It does not clearly appear, nor is it found as a fact, that in negotiations with the representative of the Randalls, it was " necessary " to assent to an assignment of the bond and mortgage to Fitch & Ellis, in order to obtain the assent of the Randalls. If such had been the fact then Fitch may have supposed that he was acting within the very terms of the powers of attorney when as agent of the plaintiff he requested the defendant to make the assignment in form to Fitch & Ellis instead of to the plaintiff. He must have known that in either form the assignment was made he had the power to collect the bond and mortgage and give receipts for moneys paid thereon, and to satisfy and cancel them when paid up.

In either event he could have used the money, so far as the plaintiff is concerned, in the manner in which it was used. But we do not regard this view of the case as very important. We refer to it as it leads up to the phase of the case which relates to the subsequent action of Fitch in the premises. As we have seen, he made the note, as he was authorized to do, of the plaintiff and replaced the moneys he had temporarily used, by way of a loan from the bank, to repay the bank. That note of $30,000 was discounted and it served to replace with the bank the money borrowed from it to redeem the bond and mortgage from the defendant. Subsequently, under the assignment made by defendant to Fitch. & Ellis, Fitch collected the money from Farley, and repaid the note of plaintiff so given to the bank. When collecting the money upon the bond and mortgage Fitch was engaged in performing acts directly within the terms of his agency for the plaintiff. The making of the note, the repayment of it, were acts expressly authorized by the agency. He therefore, as agent, knew of the borrowing, the use made of the money borrowed from the bank, the taking up of the bond and mortgage, and the holding of the same free of any claim of the defendant, thereto.

Thus as her agent he was informed of the exact situation of the plaintiff's interest in the bond and mortgage. So, too, he made a subsequent collection, and paid over to her account $4,000. We

have recalled these acts and the facts committed therewith for the purpose of showing that Fitch, as agent, was for a long period, elapsing after the transactions of April, 1874, with defendant in respect to the bond and mortgage, possessed of the facts relating to the real situation of the plaintiff's interest in the bond and mortgage. Besides, in obedience to a part of his duty to plaintiff, on the 8th of January, 1877, Fitch caused a statement to be made of the affairs of the plaintiff, and to be presented to her. In that statement there appeared an entry as to the Farley bond and mortgage in these words: "Farley bond and mortgage, $62,066.47." Now this was after the payment to her credit of $36,621.31 in July, 1875, on account of the bond and mortgages. If she or her accountants had followed out the entries, the information shown by them and the information which she possessed of the existence of those securities, she would have learned the actual situation of those securities. The general rule, which charges her with notice of such knowledge as her agent has obtained of matters in the scope of his agency, warrants the conclusion that she knew as early as July 8, 1875, and later, again learned on the 8th of January, 1877, what was the act of her agent in the premises, and what the defendant had done in respect to a surrender of the securities pledged to it when it was repaid the loan to which they were collateral. In *Adams* v. *Mills* (60 N. Y., 539), it is stated that "according to the well settled principle, that a *principal* is chargeable with all the knowledge the *agent* possesses in the transaction of the business he has in charge." (Also *Bank of U. S.* v. *Davis*, 2 Hill, 461; *Ingalls* v. *Morgan*, 10 N. Y., 185; Story on Agency, § 140; *Fulton Bank* v. *N. Y. and S. Canal Co.*, 4 Paige, 137.) With such knowledge as she thus derived of the transactions, she was in duty bound to act promptly, if she would challenge the act of her agent, who had represented that he had kept within the scope of his agency and induced another to act in reliance thereon. (*Griswold* v. *Haven*, 25 N. Y., 595; *N. Y. and N. H. R. Co.* v. *Schuyler*, 34 id., 30; *Banks* v. *Aymar*, 3 Hill, 262; *Gold Mining Co.* v. *Nat. Bank*, 96 U. S., 640.) She slumbered for a long time upon the actual situation of affairs brought home to her through the two sources we have referred to. She received the benefit of a part of the collections made upon the bond and mortgage, as they were used to swell her

account at the bank, and to extinguish her note made for the purpose of paying the loan made to her husband, or to him and Randall. Under all the circumstances disclosed, we are of the opinion that so far as the acts of the agent were beyond the technical power conferred in the written powers, the plaintiff has ratified the acts. A party may not blindly receive a part of the fruits of an unauthorized transaction, even though she be a woman with limited knowledge of business and turn round and repudiate, after an acquiescence of five years and a-half, the acts of her agent. (*Meehan* v. *Forrester*, 52 N. Y., 279; *Benninghoff* v. *The Ag. Ins. Co.*, 93 id., 503.)

We think this a proper case to apply doctrine laid down by the Massachusetts court in *Harrod* v. *McDaniels* (126 Mass., 415). It is there said, viz.: " It is a rule in the law of agency, that when the unauthorized act of the agent is done in the execution of a power conferred in a *mode not sanctioned by its terms and in excess or misuse* of the authority given, *ratification* by the principal is more readily implied from slight acts of confirmation. The duty to disaffirm at once, on knowledge of the act, is said to be more imperative in such cases, because the confidence of the principal in the fitness and fidelity of the person he has selected as an agent is shown by the relations already established between them."

The wrong which the plaintiff suffers from was not perpetrated until Fitch converted the money. He could have done that if he had an assignment in form to him as agent, or in form to plaintiff, or to plaintiff as executrix. No act of defendant has occurred since, to complete a wrong or aid the agent in going wrong.

We have a case where one of two parties must suffer by the acts of Fitch, or Fitch & Ellis, and the plaintiff put it in the power of Fitch *to seem to be authorized to receive* the securities, and he represented in behalf of the plaintiff *that such was his authority*, and the defendant, so far as the case discloses, acted in entire good faith and ought not now to be burdened with the consequences following from the agents departure from duty.

We are, therefore, brought to the conclusion that the defendant ought not to be held to have converted the bond and mortgage, nor to be in duty bound to restore it to the plaintiff. We suppose the order for extra allowance falls with the judgment.

Judgment and order reversed and a new trial ordered before another referee, with costs to abide the event.

SMITH, P. J., and BARKER, J., concurred.

So ordered.