Daniels, J.
After the assessment was made by the commissioners, assessing the executors for personal property to the amount of $375,000, an application was made in their behalf for the correction of the assessment. This was supported by the affidavit of two of the executors, stating that John Duer, one of the three executors, resided in the county of Richmond, in this state, and Julia Hallgarten, another, resided in Hamburg, in Germany. It was not denied in either of the affidavits that the property itself, concerning which the assessment was made, was located in. the city of New York, but for the reason that two of the executors resided out of the city and county of New York, it was urged before the commissioners that no assessment on account of this property could be made by them. In support of the application it was stated in the affidavit of the relator that “ part of said property consists of railroad bonds registered in the name of all three of the executors; *494 another part consists of moneys which have been loaned upon bond and mortgage taken in the names of all three executors as trustees, and the remainder consists of bonds which were registered in the name of Adolph Hallgarten during his life-time, and have never been changed. All of the above-mentioned securities are kept in a safé deposit vault, in a box or safe, rented by said Adolph Hallgarten during his life-time and still standing in his name, but the rent of which since his death has been paid by his executors.” And because he was the only executor residing in the city of New York, the objection was taken that no assessment whatever could be made on account of this property, or if it could be, that his one-third interest in it as executor, amounting to the sum of $125,000, should be the extreme limit of the assessment. The commissioners held adversely to these objections, and that the assessment could not be reduced in amount, but that it should be corrected by striking out the names of the two executors not residing in the county of New York, and remain as an assessment for the full amount against the relator.
Authorities have been relied upon in support of, the position that the commissioners could not change the assessment by striking out the names of the two non-resident executors and allowing it to stand against the relator alone,
• but these authorities are not controlling over the controversy. For in the case of Clark v. Norton (49 N. Y., 243), the assessment was held to be illegal because of the addition ' of the name of a person as owner of the real estate after the period for inserting that in the roll had expired. And . upon a like want of authority the case of Westfall v. Preston (49 N. Y., 349), was decided; a similar want of authority was presented in Overing v. Foote (65 N. Y., 263). And in Stewart v. Chrysler (100 N. Y., 378), the assessment itself , was not made to the person against whom the law provided that should be done. While in People v. Forest (96 N. Y., 544), the assessment was increased from $4,000 to $40,000, after the time in which the power to make the increase could by law be exercised. In the present case, the commissioners acted within the time allowed for that purpose by the statute, and their decision should be sustained if their action is not to be held to have been illegal in some other respect. The case of Stinson v. Boston (125 Mass., 348) is also inapplicable to this case, for it was decided upon the effect of a statute of the state of Massachusetts, excluding the power to assess the owners of shares of ships and vessels, in the place where the other business of the partners was carried on, when they themselves resided elsewhere. And in Mayor, etc., of Baltimore v. Sterling (29 Md., 48) the law failed to indicate or direct how the *495 two trustees not residing in the place where the assessment was made should be respectively assessed. In Hardy v. Yarmouth (6 Allen, 277), the decision also proceeded upon a statute of the state of Massachusetts, providing for the assessment of the estate of the testator only in the town where he resided, until notice should be given of the names of the persons to whom it had been distributed, as parties in interest; while the case of State v. Matthews, cited as reported in 10 Ohio State, 437, has not been found because of the inaccuracy of the reference. Neither one of these authorities from the reports of other states arose under any such provision of law as the legislature of this state has1 prescribed for the assessment of personal property.
The law as it has been here enacted, and was in force at the time when the assessment in controversy was made, has provided that “Every person shall be assessed in the town or ward where he resided when the assessment is made, for all personal estate owned by him, including all. personal estate in his possession, or under his control as agent, trustee, guardian, executor or administrator; and in no case shall property so held under either of these trusts be assessed against any other person.” 1 Eev. St. (6th ed.), 934, § 5.
What this statute has directed is that the executor to be assessed shall reside in the town or ward where the assessment is made, and shall be possessed of the personal estate forming the subject of the assessment. The relator has not denied that his residence subjected him to assessment under the direction contained in ,this statute and the laws specially applicable to the city of New York. Neither does it appear that any part of th$ property for which he has been assessed was not in his possession. What he has denied is that it was not in his possession or under his control “any more than it is in the possession and under the control of my co-executors, as will appear by the following facts,” being those already extracted. It is to be assumed, therefore, as that seems to have been done on the hearing before the commissioners, that the personal estate was at the time in the city of New York where this executor resided and that the assessment could lawfully be made by them, provided the relator can be held to be a person having the control or possession of this personal estate. And that he can be held to have had the possession or control within the significance of these terms appears to follow from the title vested in him as an executor. For “if a man appoints several executors they are deemed in law but as one person representing the testator, and therefore the acts done by one of them which relate either to the delivery, gift, sale, payment, possession or *496 release of the testator’s goods are deemed the acts of all, for they have a joint and entire authority.” Murray v. Blatchford, 7 Wend., 583, 617; 4 Bacon Abr. (3d ed.), 1860, pp. 37, 38.
And where there may be two or more executors, and one of them shall die, the survivors become vested with the title to the personal estate. And this is upon the same principle already mentioned, that if there be several executors, they are regarded in the law as one person. They have a joint and entire interest in the effects of the testator, including chattels real, and in case of death such interest vests in the survivor. 1 Williams on Ex’rs (6th Am. ed.), 286; 2d id., 980. And this has been embodied in a statutory provision of this state. 3 R. S. (6th ed.), 83, § 59. And for all practical purposes it vests in each of the executors a title similar to that vested in joint tenants. Each may discharge debts due to the estate by receiving payment (People v. Keyser, 28 N. Y., 226), or release real estate from the Ben of an incumbrance. Stuyvesant v. Hall, 2 Barb. Ch., 151. The title of a joint tenant has been declared to extend to the whole of the property jointly held, and his possession to be that of the entirety as well of every parcel as of the whole (4 Kent Com. [7th ed.], 375), and the relator was vested with this title and possession, over the personal estate of the testator, which the commissioners assessed for as to that he was a trustee for the next of kin, holding it in trust for their benefit. Perry on Trusts (2d ed.), 94; 2 Story Eq. Jur., § 1208. And he is designated a trustee in the section of the statute previously quoted declaratory of the power of the commissioners over the assessment. And it is quite well settled that trustees are in equity regarded as joint tenants. Id., § 343.
These principles, sanctioned as they are by the authorities, vested the relator with the title in trust to this property. And as it was in his possession, or under his control, and he himself was liable to assessment as resident of the city of New York, the commissioners were right in making the assessment of it to him, for under the statute it could be made to no other person. The executor Duer had not the possession of the personal estate where he resided, neither had the executrix Hallgarten. And it follows that if the relator could not be assessed, then this property will escape taxation. When the proceedings were before them, as they were upon his application, and also on the application of the executor Duer, and it was made to appear to the commissioners that the assessment should be against the relator alone, they were authorized to correct the assessment in that respect by striking out the names of the two other executors. For by section 820 of *497 chap. 410 of the Laws of 1882, very general authority has been given to the commissioners to correct their assessments. It has not been restricted to a mere reduction of the amount of the assessment, but if in the judgment of the commissioners “the assessment is erroneous, they shall cause the same to be corrected, and fix the amount of such assessment as they believe to be just,” etc. The authority delegated to them was to correct errors appearing to have intervened in the assessment, and as this assessment was shown to be erroneous by including in it the names of the non-resident executors, those names were very properly stricken out of the assessment. By making this change, neither the assessment itself nor the liability of the relator was in any manner increased. It was still for the same amount, and whether he himself shall be required to pay the tax, or it may be paid by him in conjunction with the other two executors, will make not the slightest difference to the estate. For whoever may pay it, it will either be paid out of the funds of the estate committed to the charge of the executors, or the executor paying it will reimburse himself out of those funds. If that correction had not been made by the assessors themselves this court could have made the correction under section 2141 of the Code of Civil Procedure upon the hearing of the writ of certiorari. And that would have left the assessment as the commissioners did leave it for their final action, and the court certainly could do no more than the commissioners should themselves do to correct an error in their proceeding. The assessment which was made was accordingly right, and it should be affirmed, with costs.
Davis and Brady. JJ., concur.